Mr. Jones, would you be pleased to hear from him? Your Honor, may it please the Court, Mark Jones for Delton Eugene Warren. The Fourth Amendment protects the people from the government. It protects their persons and the sanctity of their homes. And the process of issuing a warrant at common law to the founders, and to this day, is a serious and solemn event. The warrant requirement is not a bureaucratic or administrative box for law enforcement to simply check. The Fourth Amendment is, and has been, the levy protecting our privacy. As I said in the brief, we must, of course, look to the text of the amendment in discerning its meaning. But the inquiry does not end there, and the inquiry has never ended there. And to get at it, consider this. In this case, why didn't Detective Brian Tompkins just sign the warrant himself? Well, because it had to be signed by a judicial officer. But why? Because the person checking the government's power has to be neutral and detached. It has to be signed under state law, but we have several cases, Clyburn is one of them, where we made the point that this is governed by federal requirements and not by state law. And that's, you know, just flattening the case without precedent. I fully agree, Your Honor, and I don't assert, I'm not making any state law arguments on behalf of Mr. Warren. And so when I ask about why it has to be a neutral detached magistrate, why it has to be a judicial officer under the Fourth Amendment, I look to the text, and I have it right here. And the text doesn't say anything about a judicial officer. The text doesn't say anything about a neutral party. The text actually leaves out a number of key things, such as the warrant can't be issued pro tonque. Nothing about the text authorizes law enforcement to seize somebody during the course of a search warrant. Nothing in the text discusses the nexus between the criminal act and the place. And so, even though these aren't in the text... That's fine, but there's simply no requirement there. And what, I guess, troubled me about your case is it seemed that this was just the most minuscule little picking at something. And the state judge had made the notations on the warrant. The state judge had signed the warrant application in a number of places and entered the 2.40 p.m. at the time it was issued box. But it signed the warrant affidavit. And then the first and tenth circuit said that an unsigned warrant was not fatal if there were subsequent reliant statements of intent from the issuing judge. And here the state judge explained in a signed statement that it was simply an inadvertent oversight that had left that unsigned. But if you look at all the places that she's made marginal notes and signed and everything, and then her signed statement, and there is simply no room for doubt that she approved this. And signed and that she issued it and that she found it was a valid warrant. It's just so, just sort of taking a minuscule pick at something that's perfectly clear. With respect, Your Honor, I could not agree more or not disagree more that the error here is minuscule. And I think that it is fundamental and here's why. All of- Mr. Jones, let me ask you before we go down that road. Why can't we just decide this case against you under the good faith exception without having to reach what the first and the tenth circuit did? Because there is no way a reasonable law enforcement officer can look at what was returned to Brian Tompkins, the detective, and believe that that is a validly issued warrant. And I think the best place to look, Your Honor, for that is Joint Appendix page 43. This is a copy of the warrant or the document that reports to be a warrant before it was executed without notations on the left-hand side. And document 43 is what would have been given to Delton Warren. And in the very middle of it, there's a giant hole for the authorization or for any assurance that the judge has the authority or that the officer has the authority to seize Mr. Warren. Well, yeah, did he apply for a warrant? He got a warrant? He executed on the warrant? I don't understand what's wrong with Judge Floyd's objection. I mean, you want officers to do these kind of things. You want them to apply for warrants and when they get a warrant, you want them to execute the warrant in accordance with the law? I mean, I don't understand. I mean, I think your case is unique on the merits, but I do think this is a classic situation, as Judge Floyd points out, for Leon to apply. And so the reason, Your Honor, why Leon doesn't apply and the reason why what the detective did in this case is insufficient is that it undercuts and completely destroys the meaning of the Fourth Amendment if a signed and completed warrant application is sufficient. Of course, we want the officers to do a warrant application. Of course, we want them to do it. Well, but here you've got more than that because you've got, as has already been mentioned, you've got the issuing judge's affidavit. It just seems like to me whether we're looking at this as a on its face Fourth Amendment analysis or a Leon claim, your only refuge is to say that there is a per se requirement that cannot be waived for a signature of the issuing judge on the face of the warrant. I think that's correct with one modification, Your Honor. I think that there is a per se requirement that either the signature or some assurance of authority of the issuer be on the face of the warrant. And that comes from, I believe... Well, but the police officer saw the judge sign every other page that was attached to the warrant and he saw the judge right on the face of the warrant. The testimony was clear that he saw the judge initial in the style of the case. And it truly, I think, is difficult for any law enforcement officer to look at or anybody to look at Joint Appendix page 43 and believe that this is a valid and signed warrant. Well, what gave the officer any kind of notice of that? I mean, when the officer sees that this judge has initialed the warrant and everything else, what gave the officer any kind of real notice that this was an invalid warrant? I mean, Leon makes the point over and over that you deter police conduct that needs to be deterred. But this is not something that needs to be deterred. It is at most a small inadvertent mistake on the part of the issuing judge and a fine point with respect to the warrant, which the officer had no notice of. I mean, I think probably 9 out of 10 officers in the same situation would have thought this to be a valid warrant. And if it's not, what happened here is not outrageous police conduct. It needs to be in some way deterred. And that's what Leon, that's the point that Leon makes is this what we are talking about here is purely technical in the smallest sense, smallest and most minute sense. And to hold the officer blameworthy in this is just, I can't understand it. So with respect, Judge Wilkinson, while you suggest that this is a minuscule or technical oversight, to me, the onus on the officer is so minuscule here. Simply look at the face of the document, right? I mean, the officer has, by his own testimony, sought hundreds of these. And he testified that the way in which he gets permission to exercise the state's power is by the judge signing it. And so the officer knows that the judge signing it and signing it in the middle of JA-43 is how the court gives its permission. But here, I think, is the important part. The argument by the government is that there is no signature requirement in the text of the Fourth Amendment and that that's the end of the analysis. But we know that the Fourth Amendment was built on a common law understanding. I identified earlier a number of different requirements that relate to the Fourth Amendment, none of which are in the text. And in this case specifically, the magistrate judge got into this Fourth Amendment analysis. It cites Starr v. United States. The site for that is 153 U.S. 614, and it's page 192 of the joint appendix. What the Supreme Court of the United States did in Starr is to analyze the common law foundations upon which the Fourth Amendment warrant requirement was built. And in the Supreme Court's own analysis, it goes through Hawkins and Dalton and Koch and Blackstone. And it cites Book 4, Chapter 21 of Blackstone's commentaries for the common law understanding that a warrant had to be underhand and at the time under seal. And the reason, Your Honor, why it had to have those requirements was so that the public could have assurance that the person executing it had the authority. Let's talk about the real world. Yes. There's no real world invasion of anybody's rights here. Nobody's privacy rights have been sacrificed by what happened here. If you talk about the real world, human beings are not perfect, but in this case, they were pretty darn good. The state judge was conscientious both in preparing the warrant and in the signed statement afterwards. And the officer was conscientious in seeking the warrant and in believing that it was valid for him to execute upon it. And when you get down to the Fourth Amendment, it's obviously one of our most important amendments and no one wants to abridge it. But at the same time, you have to ask yourself, were somebody's Fourth Amendment privacy rights really sacrificed here? Were the police and the state judge really out of bounds? I'm talking about the real world. Nobody's privacy rights were in any way, shape or form compromised. So I again disagree, and here's why. Because an officer of the law may not enter somebody's house without a valid warrant, regardless of the intentions. They have to have a warrant. And I believe it's the Supreme Court, the United States v. Chadwick, 433 U.S. 1, which has said,  assures the individual whose property is being searched or seized of the lawful authority of the executing officers. Well, I'm glad you didn't omit the phrase or other indicia of authorization. That's correct. You might want to read Leon to us while you're at it. I think that either the signature or other indicia is critical. And that's why the Supreme Court in the Starr case discussed the signature or the seal. And what it held was that we don't always need the seal where we have the signature, which is that other indicia of reliability. And the real world consequence, Your Honor, is that when officers go to execute these documents, or when the people are faced with something that says, you may come into my home or seize my person, there needs to be assurance on the face of that document that that officer has the authority of law when doing that. And that's what the signature or other indicia of authorization. The Supreme Court has applied, Leon, even in situations where probable cause was not present. But they said, all right, there's still good faith reliance on a warrant. Here, your entire argument has not even suggested that probable cause was not present. And that's just what I'm talking about in terms of the real world. You've made this argument. And you haven't even gotten to the real world implications of this, which is that you haven't even suggested that there wasn't probable cause here. So the officer knew what he knew. He'd seen the state judge sign the warrant, and the state judge's markings all over it. Nobody's rights were harmed. That's the problem. And I see my time has expired. I do have two answers, though, to your questions. It hasn't expired. You've got some time for rebuttal. Fantastic. So two things. One, the reason why Leon is inapplicable here is because the detective, and this is where state law actually does come in, the detective wasn't seeking a federal warrant. He was seeking a state warrant. And the state law required that JA-43 look drastically different. And he had all he had to do... No, you haven't even mentioned our Clyburn case and the idea that this is in a state statute. But there's no similar idea expressed in a federal statute. Yes. So the point, though, was as this judge walks away, or as the detective walks away, he should know right off the bat the state law just being one thing to alert him to it, that this is not a warrant. But here's the point about probable cause. Counsel, you've had some extra time, and I think you will agree with me that the bone has been chewed. Maybe not satisfactorily from your standpoint, but it has been chewed. I'm going to ask Judge Deji or Judge Floyd if they have any further questions, and then we can extend your time if they have further questions. No further questions. I don't have a further question. All right. Thank you, Mr. Jones, and we look forward to hearing from you in Revolu. Mr. Rhodes. Good morning, Your Honor. Thank you. May it please the court. My name is Chad Rhodes. I'm an assistant United States attorney here in the Eastern District of North Carolina. It's my honor and privilege to argue this case before you today in the case United States versus Delton Warren on behalf of the United States. I will first focus my time on the Fourth Amendment issue, and then I'll move on to the good faith exception. I know that some of the facts have already been discussed in this case, but I think it's important to explain what happened practically in this case and what happened with how the warrant was actually obtained. This case comes from a drug investigation into Delton Warren. In February of 2017, there was a tip that he was selling drugs. There were controlled purchases made. There was a trash refuse pull done to develop probable calls for a search warrant. In applying for that search warrant, Detective Tompkins provided statements under oath in the form of a probable cause affidavit. He identified Mr. Warren's residence as the place to be searched. He identified what items would be seized in relation to that search. Interning, or intern, the issuing judge signed every page of the affidavit. And the warrant application. In addition, the issuing judge filled in by hand the defendant's address on the warrant and wrote in the time at which she issued the warrant, followed by her initials. However, as has been pointed out, she mistakenly did not sign the warrant itself. After the judge handed the warrant to Detective Tompkins, he went and served the warrant, executed at the residence, and recovered a significant amount of drugs, money, and a firearm. The narrow question for this court to decide is whether the failure of the issuing judge to sign the warrant otherwise invalidates a warrant that complies with the requirements of the Fourth Amendment. The plain language of the Fourth Amendment outlines what is necessary before a warrant may be issued. Specifically, the warrant must be supported by probable cause. It must describe the place to be searched, describe the items that will be seized, and the facts supporting probable cause must be done under oath for affirmation. Nothing in the Fourth Amendment requires the issuing judge to actually sign the warrant, nor does it require specific signs of issuance. The First Circuit and the Tenth Circuit, on extremely similar facts, reached the same conclusion. Failure by the issuing judge to sign a warrant itself does not invalidate the warrant as long as it complies with the actual requirements of the text of the Fourth Amendment. Here, the warrant complies with the textual requirements of the Fourth Amendment. The warrant was supported by probable cause. The person seeking the warrant, who is Detective Tompkins, did so under oath for affirmation, and the warrant described the place to be searched and what would be seized. The judge found the warrant was supported by probable cause, and she issued the warrant. We know she issued the warrant because she wrote in the time that she issued it, and she made modifications to add the defendant's address. There's no reason for the issuing judge to make those edits to the warrant unless she intended, or actually did, authorize it. Her initial failure to sign the warrant itself was an oversight, and she actually provided a statement to the government that was used in the defendant's suppression hearing that stated she did authorize the warrant. Specifically, the judge stated that she issued the warrant based on the sworn probable cause affidavit of Detective Tompkins. The magistrate, who authored the memorandum of recommendation to the district court concerning how that suppression hearing should be ruled on, found the evidence to be compelling. The evidence spoke of her handwritten changes to the warrant and the affidavit, excuse me, the statement she provided during the suppression hearing, and the district court agreed with the magistrate court, concluding that the warrant was both valid and consistent with the decisions in the Lyons and Cruz cases. This warrant clearly meets the requirements of the Fourth Amendment and should be upheld. However, should the court find that the warrant was deficient, the good faith exception should apply in this case, as Detective Tompkins reasonably relied on the warrant itself. The Supreme Court in Leon noted that the exclusionary rule is designed to prevent police misconduct rather than to punish the errors of judges and magistrates. There was no police misconduct in this case, and there's no reason to suppress the evidence based on a judicial error. In evaluating this case under the Lyons factors, the magistrate was not misled by information in the affidavit. The magistrate did not wholly abandon her duties as a detached and neutral role. The warrant was not based on inadequate probable cause, and the warrant was not facially deficient. Now, the other side is attempting to argue that because the warrant did not contain a Leon is talking about facially deficient when it comes to particularity as the place to be searched and the items to be seized. Detective Tompkins' reliance on the warrant was not unreasonable because he met the requirements of the Fourth Amendment. As to his part, he provided a sworn statement under oath providing probable cause. He described what was to be searched and he described what was to be seized. His conduct was neither the source nor the cause of the error. Detective Tompkins relied in good faith on Judge Hill's probable cause determination when she signed the application, the affidavit, and made his handwritten edits to the warrant and handed it back to him. Thus, in our opinion, Your Honors, the search and seizure should not be suppressed. We ask that you find it in the government's favor. Yes, Your Honor.  I was going to say, Your Honor, unless the court has any questions, I'm happy to defer the rest of my time. Let me ask Judge Agee, do you have any questions? No, sir. Judge Floyd? No, sir. All right. We thank you very much. Thank you, Your Honor. We appreciate it. Mr. Jones, you have some time for rebuttal here. Thank you, Your Honor. The several points I want to make start with that the probable cause finding or whether or not there is probable cause is just not enough, nor is the fact that the judge intended to sign it sufficient under the Constitution. I fully recognize that the Tenth and the Seventh Circuits have opinions on this, and Cruz and Lyons. My brief cites extensively a different position from a district court in the Evans case. But candidly, I believe that the Evans analysis is the closest one to being correct and the closest one that is in line with the common law understanding and the common law foundation of the Fourth Amendment and with the Supreme Court statement about that common law understanding. And that is that we cannot look to just the text. We must look to the common law. And there is something that is critical about the face of the document itself, so that if the document that is going, that is issued, does not have either a signature or sufficient incidence of the authority of the issuing officer, it is invalid. That is my position. And this document, JA-43, simply is not a warrant. It is a document that doesn't even, it is so bare of what is required that it does not have sufficient indication of authority of the judge. The spot where the judge's name would be listed is blank. The judge's signature is listed would be blank. And simply an initial in the style section that says CH, no indication of who that is, doesn't provide to anybody receiving this that this has the authority of somebody authorized by law to issue this. All right, do you have anything further, Mr. Jones? No, Your Honor. I would simply say in summation that I believe that the common law understanding of the Fourth Amendment signature or other authentication requirement did not occur here. This was not a warrant. And the evidence obtained from it should have been suppressed. I would ask the court to reverse. All right, Judge Agee, Judge Floyd, do you have anything further? Nothing further. Judge Agee, do you have anything further? No, sir. All right, I want to thank you both, Mr. Jones. I really appreciate your argument. I know you're court appointed. I want to express the thanks to the court for the argument that you presented to us today. Yes, Your Honor.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd